

**OFFICE OF**

# THE ATTORNEY GENERAL

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 28, 1947

FAGAN DICKSON
FIRST ASSISTANT

State Board of Pardons & Paroles
Austin, Texas

ATTN:  Hon. Walter C. Strong, Member

Opinion No. V-415

Re:  Constitutionality and
construction of H. B.
120, 50th Legislature

Dear Sir:

You have requested our opinion relative to various matters arising by virtue of the "Adult Probation and Parole Law" passed by the 50th Legislature (H. B. 120). We will restate your questions and answer each question immediately following each restatement. We will then proceed with a general discussion as to our construction of the Act and the law upon which we based our answers.

Question No. 1.  Is Section 12 of H. B. 120, 50th Legislature, constitutionally valid and does it supersede the constitutional amendment that designates paroles as reprieves?

We know of no constitutional amendment that designates paroles as reprieves. In fact, a parole is not a reprieve or any form of executive clemency. Section 12 of said Act is therefore not unconstitutional as being in conflict with Section 11 of Article IV of the Constitution of Texas.

Question No. 2:  Reprieves having been considered by the previous penitentiary officials as paroles, is the Board of Pardons and Paroles under H. B. 120 to consider such terms, reprieves and paroles, as synonymous?

The Board of Pardons and Paroles should not consider reprieves and parole as being synonymous.

Question No. 3: Sections 1 to 7 inclusive have reference to probation. Section 1 states "the courts of the State of Texas having original jurisdiction of criminal actions, etc." Does this include corporation courts, justice courts, and county courts in criminal cases for misdemeanors; and do such courts have the right to probate persons convicted therein?

Corporation courts, justice courts, and county courts do not have the authority under this Act to place persons convicted in such courts under probation.

Question No. 4: Section 7 states that the Board of Pardons and Paroles created by the Constitution of this State shall administer the provisions of this Act and shall act as the State Board of Probation as authorized by Section 11a, Article IV, of the Constitution. Section 8 provides for a method for selection of the Board members by creating a committee, examining applicants. We would like to know whether or not these two sections are in conflict with the constitutional amendment, Section 11, Article IV, creating the Board of Pardons and Paroles and are they constitutional?

We do not find wherein a State Board of Probation is mentioned in Section 11a of Article IV of the Constitution. Section 7 is not in conflict with the constitutional amendment, Sec. 11, Art. IV. Although the Act in said Section 7 provides that the constitutional Board of Pardons and Paroles shall act as a State Board of Probation, we do not find anywhere in said Act wherein such Board is given any duties to perform in reference to probation. Section 8 of said Act is unconstitutional in that it is in conflict with Sec. 11 of Art. IV; for the State Constitution provides only one qualification for members of the Board of Pardons and Paroles--that they "shall have been resident citizens of the State of Texas for a period of not less than two years immediately preceding their appointment."

Question No. 5: Does not the reference to probation require the trial judge who tries criminal cases and puts a defendant on probation to retain jurisdiction of the case and administer same; and that the Board of Pardons and Paroles should not take jurisdiction of such case until the party has violated his probation and been committed and received at the penitentiary of this State?

The Probation Act does contemplate that a prisoner on probation is within the continuing jurisdiction of the court of conviction, assisted, of course, from time to time as may be necessary in the enforcement of his jurisdiction, by the proper probation officer or officers. Of course, when the probationer has lost his status as a probationer, and the gates have been closed upon him by the officials of the penitentiary or other place of correctional confinement, the Court's jurisdiction ceases. The Judge has performed his judicial functions under the law.

Question No. 6: It will be observed that this Act does not provide for the appropriation of any funds so that it could be administered and, for that reason, is the Board required to try to administer same?

It is the duty of the Board of Pardons and Paroles to administer this law insofar as they possibly can with whatever funds are available to them.

Question No. 7: Section 12 states "the Board is hereby authorized to release on parole with the approval of the Governor any person confined in any penal or correctional institution in this State, etc." Is this not in conflict with the Constitution under which the Governor has the authority to release people from the penitentiary, and therefore unconstitutional?

As stated in our answer to your Question No. 1, Section 12 is not in conflict with the Constitution of Texas. It provides that the Governor shall have the power after conviction, on the recommendation of the Board of Pardons and Paroles, to grant reprieves and commutations of punishment and pardons.

Question No. 8: Section 20 sets out, among other things, that a paroled prisoner who is accused of violating his parole is entitled to a hearing and states when the Board has determined this matter, they may revoke his parole. Is this not in conflict with the constitutional amendment creating the Board of Pardons and Paroles, and placing this duty upon the Governor of the State?

Section 20, wherein it attempts to authorize the Board of Pardons and Paroles to revoke a parole

theretofore granted, is unconstitutional in that it is in conflict with that portion of Section 11 of Article IV of our Constitution, which provides that "The Governor shall have the power to revoke paroles."

Question No. 9: Section 19 authorizes the Board to issue warrants for the return of a parolee to the penitentiary, upon finding a violation of his parole, and that any probation or parole officer or any other peace officer may arrest a parolee without a warrant when the parolee has, in the judgment of the parole officer or peace officer, violated the conditions of his parole. Can this Section of the bill legally give such officer the right to make arrests as stated therein?

Inasmuch as the Governor is the only person who can revoke a parole, such parolee is entitled to his liberty under such parole until it has been revoked by the Governor; and it is our opinion that, until such revocation, neither probation nor parole officers nor any other peace officer may arrest a parolee and deprive him of his liberty by virtue of such conviction, either upon a warrant issued by the Board of Pardons and Paroles or without such warrant.

Question No. 10: Section 9 requires members of the Board to give full time to the duties of their office and to be paid a salary of $6,000 annually. No appropriation has been made for this. Does this entitle each member of the Board to a deficiency warrant for the difference between the $6,000 and the salary he is being paid at this time, as shown in the Appropriation Bill?

House Bill No. 807 of the 50th Legislature makes the salaries of those officers whose salaries are statutorily and not constitutionally fixed at the sums appropriated therefor for the current biennium. The current member salaries are only $4,764.00. There can be no deficiency if the appropriated salaries are paid.

Question No. 11: Should the Board in making its recommendations for clemency to the Governor place in such recommendations the conditions required of the parolee, or should the Governor place such conditions in his proclamations, when the recommendations do not contain them?

As stated above, the releasing of a convicted person on parole is not an act of executive clemency. This Act provides that a person who has served the requisite time in the penitentiary may be released on parole by the Board of Pardons and Paroles upon the approval by the Governor. The Board, therefore, does not make recommendations for the release on parole-- but should grant the parole by its own proclamation, and should incorporate therein the conditions required of the parolee, which should be submitted to the Governor for his approval or disapproval. Of course, such parole would not become effective until approved by the Governor as provided for in the Act, and accepted by the parolee.

Question No. 12: Could the Board make recommendations for clemency under the constitutional amendment creating the Board, which does not refer to parole, and without considering the requirements referred to in the bill with reference to parole?

Inasmuch as the granting of a parole is not the granting of executive clemency, the Board in making recommendations to the Governor for executive clemency--which includes reprieves, commutations of punishment, and pardons--is not required to consider any of the provisions contained in this Act, and may make in its recommendations any condition or conditions not illegal, immoral or incapable of performance.

Question No. 13: What is the difference, if any, with reference to recommending a reprieve, a conditional pardon, or a parole? They all have the effect of releasing a prisoner from the penitentiary.

As stated above, the Board does not recommend a parole.

## GENERAL DISCUSSION

We note that in your first letter of request you state "the Board will appreciate an interpretation of the Act as a whole;" so in addition to the answers above made to your specific questions and the discussion of the reasons for such answers to follow, we will attempt to interpret the Act as a whole as well as the various sections thereof.

Section 11 of Article IV of the Texas Constitution before its amendment in 1936 read as follows:

"In all criminal cases, except treason and impeachment, he (the Governor) shall have power after conviction, to grant reprieves, commutations of punishment and pardons; and under such rules as the Legislature may prescribe, he shall have power to remit fines and forfeitures. With the advice and consent of the Senate, he may grant pardons in cases of treason; and to this end he may respite a sentence therefor, until the close of the succeeding session of the Legislature; provided, that in all cases of remissions of fines and forfeitures, or grants of reprieve, commutation of punishment or pardon, he shall file in the office of the Secretary of State his reasons therefor." (Parenthetical matter ours)

Such Section as amended in 1936 reads as follows:

"There is hereby created a Board of Pardons and Paroles, to be composed of three members, who shall have been resident citizens of the State of Texas for a period of not less than two years immediately preceding such appointment, each of whom shall hold office for a term of six years; provided that of the members of the first board appointed, one shall serve for two years, one for four years and one for six years from the first day of February, 1937, and they shall cast lots for their respective terms. One member of said Board shall be appointed by the Governor, one member by the Chief Justice of the Supreme Court of the State of Texas, and one member by the presiding Justice of the Court of Criminal Appeals; the appointments of all members of said Board shall be made with the advice and consent of two-thirds of the Senate present. Each vacancy shall be filled by the respective appointing power that theretofore made the appointment to such position and the appointive powers shall have the authority to make recess appointments until the convening of the Senate.

"In all criminal cases, except treason and impeachment, the Governor shall have power,

after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have the power to revoke paroles and conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

"The Legislature shall have power to regulate procedure before the Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons therefor, and shall have authority to enact parole laws."

The Texas Constitution was amended in 1935 by adding Section 11A to Article IV, which reads as follows:

"The Courts of the State of Texas having original jurisdiction of criminal actions shall have the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence, under such conditions as the Legislature may prescribe."

We do not find any other provisions of our State Constitution that we deem applicable to House Bill No. 120.

The first six sections of said Act give the power to the courts of record of the State of Texas having original jurisdiction of criminal actions, in certain instances, to suspend the imposition or the execution of sentence and place the convicted defendant on probation for the maximum period of the sentence imposed. Such sections further provide for an investigation by a probation and parole officer of the circumstances of the offense, criminal record, social history

and present condition of the defendant, as well as other matters. It provides that such courts shall determine the terms and conditions of the probation and lists various conditions that may be included in such probation, and provides that upon the expiration of the period of probation such courts by order shall discharge the defendant. It also provides that having discharged the defendant, such courts may set aside the verdict or permit the defendant to withdraw his plea of guilty and dismiss the accusation, complaint, information or indictment against him in a manner very similar to that provided for in the case of a suspended sentence. It also provides that such courts may issue a warrant for the defendant for violation of any of the conditions of the probation and provides that such courts shall grant a hearing on the question of such violation, without a jury, and may continue or revoke the probation, with the right of the probationer to appeal the revocation.

As stated in answer to your third question, it is our opinion that corporation courts, justice courts, and county courts do not have the authority to place persons convicted in such courts under probation, for the reason that such courts have jurisdiction to try only persons charged with misdemeanors. You will note that both the Constitution (Sec. 11A of Article IV) and this Act give the courts "the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence. . ." (Underscoring ours). A sentence is imposed only in felony cases. See Chapter 3 of our Code of Criminal Procedure. Such Chapter provides for a "judgment" and a "sentence" in felony cases, but for only a "judgment" in misdemeanor cases. As used in the Constitution and this Act, is the word "sentence" to be construed as meaning also "judgment"? We think not. As stated in 12 Tex. Jur., Par. 355, P. 717, "Judgment and sentence are not the same thing; the two are distinct and independent." Furthermore, both the Constitution and this Act state that the courts shall have "the power, after conviction, to suspend the imposition. . . of sentence" and then to place the defendant on probation. If "sentence" means "judgment," then the courts have the power to suspend the imposing of a judgment and then to place the defendant on probation. There has to be a judgment before there is a conviction. If you do not impose a judgment, that is, suspend its

imposition, you do not have a conviction; and then to place a defendant under restraint of his liberty, by placing him on probation, would violate our Constitution, which provides that:

"No citizen of this State shall be deprived of . . . liberty, . . . privileges . . . except by the due course of the law of the land."

You will further note that the following words are used in the Act: "of the sentence imposed"; "might have been sentenced"; "the sentencing judge"; "shall be sentenced." The word "judgment" is never used.

It appears to us that the language used in providing for the probation of convicted defendants is clear and unambiguous and therefore needs no construction with the exception of that portion which states that the probationer, in the event his probation is revoked, may appeal the revocation, in that it does not state to whom such appeal will be made. The following Section 7 provides that the Board of Pardons and Paroles, created by the Constitution of this State in Sec. 11, Art. IV thereof, shall administer the provisions of this Act and shall also act as the State Board of Probation. The Legislature may have intended that the probationer would have the right to appeal the revocation to such State Board of Probation; but, in the absence of language so stating, we are inclined to the view that such appeal should be made to the Court of Criminal Appeals as that Court has been granted appellate jurisdiction in all criminal matters.

The only question that arises in our minds as to the authority of the Legislature to give the courts of this State the right to release on probation a person who has been convicted of a criminal offense is the question as to whether or not such release on probation would conflict with the constitutional power granted to the Governor, after conviction, to grant reprieves and commutations of punishment and pardons. Of course, if such release on probation is a reprieve or a commutation of punishment or a pardon, then such action granting such power to the District Court would be unconstitutional in that such power has been granted by the Constitution exclusively to the Governor of this State. The

same would be true as to the portion of this Act, which will be hereinafter quoted, which gives the Board of Pardons and Paroles authority to release a convicted person on a parole with the approval of the Governor if such parole is either a reprieve, commutation of punishment, or pardon. Hence our discussion as to whether or not this act, in giving the courts authority to release a person on probation is in conflict with Section 11 of Article IV of our Constitution, will likewise apply to those provisions giving the Board of Pardons, with the approval of the Governor, the right to release convicted persons under a parole.

A pardon is an act of grace proceeding from the power entrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. Young v. Young, 61 Tex. 191; Ex Parte Rice, 162 S. W. 891. There are several kinds of pardons; thus a pardon may be full and unconditional, partial or conditional. Carr v. State, 19 Tex. App. 635. A pardon is conditional where it does not become operative until the grantee has performed some specified act, or where it becomes void when some specified event transpires. Snodgrass v. State, 150 S. W. 162.

Commutation of punishment is the change of a punishment to which a person has been sentenced to a less severe one. Snodgrass v. State, 150 S. W. 162.

A reprieve is the withdrawing of a sentence for an interval of time whereby the execution thereof is postponed to a day certain. Snodgrass v. State, 150 S. W. 162.

A parole is the conditional release of the convict before the expiration of his term, to remain subject, during the remainder thereof, to supervision by the public authority and to return to imprisonment on violation of the condition of the parole. Board of Prison Commissioners v. DeMoss, 163 S. W. 183. The Court in Com. Ex. Rel. Banks v. Cain, reported in 143 A.L.R., p. 1473, held that the power of parole was an administrative function which does not impinge upon the judicial power of sentencing the accused in conformity with the law; that the sentence was in nowise interfered with; that the parolee was not discharged but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous

to that employed in the "trusty" or "honor" system of prison discipline; and that a parolee was merely serving his time outside the prison walls which was in legal effect imprisonment. The Court further stated as follows:

> "A parole, . . . does not obliterate the crime or forgive the offender. It is not an act of clemency but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or affect the sentence; the convict remains in the legal custody of the state and under the control of its agents, subject at any time, for a breach of condition, to be returned to the penal institution. Neither is a parole a commutation of sentence within the meaning of that term in the constitutional provision."

The Constitution confers upon the Legislature the power to define crimes and fix the punishment therefor. This Act does not authorize the courts or the Parole Board to suspend any law of this State; but the Legislature has provided that in certain contingencies, as part of the fixed punishment, the convicted defendant in felony cases may serve a portion of his sentence outside the prison walls. This Act should be applied to and read into each and every article of the penal code fixing punishment for felony offenses. See Baker v. State, 158 S. W. 998.

We are of the opinion that both the probation and parole provisions of the Act in question constitute part of the punishment provided by the Legislature to be inflicted on those who offend against our criminal laws. To illustrate in reference to the burglary statute, as was done by the Court in the Baker case, supra, since the passage of H. B. 120, such statute now reads as follows:

> "The offense of burglary is constituted by entering a house by force with the intent to commit the crime of theft, and the punishment for the crime shall be imprisonment in the penitentiary not less than two nor more than twelve years, provided that if before trial the person charged with the

offense shall request in writing that the
issue of whether or not he has ever before
been convicted of a felony shall be submitted
to the jury, and if the jury shall find that
such person ought not in any event be confined
in the penitentiary for a longer time than
five years, and has never before been convict-
ed of a felony, they may in their verdict fur-
ther find that no punishment shall be assessed,
if within a given period of time he commits
no other offense against the laws of this
state; but in the event he shall commit another
offense, then he should be punished by confine-
ment in the penitentiary for a given period of
time as stated in their verdict, and provided
further, when it shall appear to the satisfac-
tion of the Court that the ends of justice and
the best interests of the public as well as
the defendant will be subserved thereby, the
court shall have the power after conviction or
a plea of guilty, and where the maximum punish-
ment assessed the defendant does not exceed ten
years imprisonment, and where the defendant has
not been previously convicted of a felony, to
suspend the imposition or the execution of sen-
tence and place the defendant on probation for
the maximum period of the sentence imposed, in
accordance with the terms and provisions of
H. B. 120, Fiftieth Legislature of Texas, and
provided further that the Board of Pardons and
Paroles is authorized to release on parole with
the approval of the Governor after he has been
confined in any penal or correctional insti-
tution in this State, and after he has served
one-third of the maximum sentence imposed, in
accordance with the provisions of H. B. No.
120 of the Fiftieth Legislature."

You will also note that the Section 11 of Article
IV of the Texas Constitution as amended in 1936 gave the
Legislature the authority to enact parole laws. You
will further note that paragraph (i) under Sec. 36 of
the Act in question defines "Executive Clemency" to mean
a "pardon, commutation of sentence, reprieve, remission
of fine or forfeiture granted by the Governor or any of
these, but not parole or any form of parole," and that
in paragraph (j) under Sec. 36 it defines probation as
the release of the convicted defendant by a court under
conditions imposed by the court. Thus we find that the

Constitution as well as the Legislature has construed the terms "parole" and "probation" as not to constitute an act of executive clemency. We have examined the decisions of the courts in other states and find that they have held that a parole is not a commutation of punishment or a pardon. See State v. Duff, 144 Iowa 142, 122 NW 829, 24LRA (NS) 625, 138 Am. St. Rep. 269; Ex Parte Patterson, 94 Kan. 439, 146 P. 1009; LRA 1915 F. 541; George v. Lillard, 106 Ky. 820, 51 SW 793, 1011; State ex rel. Bottomly v. District Court, 73 Mont. 541, 237 P. 525; State v. Peters, 43 Ohio St. 629, 4 NE 81.

The Court of Criminal Appeals in Ex Parte Black, 59 S. W. (2d) 828 held that a proclamation of the Governor which was termed a "furlough" and which merely postponed the time of serving the sentence was actually a "reprieve" and was not a "parole." The Court further held that a parole in its legal aspect has no relation to the power conferred upon the Governor in Sec. 11 of Article IV of the State Constitution to grant reprieves, commutations of punishment, or pardons.

Section 8 of the Act in question creates a nomination committee for the purpose of certifying to the appointing authorities provided in Sec. 11 of Article IV of our Constitution persons eligible to be appointed to the Board of Pardons and Paroles. As stated above, it is our opinion that this Section is unconstitutional in that it is in direct conflict with said Section of the Constitution which states that the only qualification needed to be eligible to be appointed to said Board is that the person appointed shall have been a resident citizen of the State of Texas for a period of not less than two years immediately preceding such appointment. 9 R.C.L. 1124; Dickson v. Strickland (S. Ct.) 265 S.W. 1012.

Section 9 of the Act provides for the $6,000.00 annual salary of the members of the Board of Pardons and Paroles and further provides that the Board shall meet at the call of the chairman or from time to time as may be determined by a majority vote of the Board, and that a majority of the Board shall constitute a quorum for the transaction of all business. This Section is valid. The portion thereof which provides for an annual salary of $6,000.00 is ineffectual, as stated above, in that

H. B. No. 807 limits the salary of the members of the Board of Pardons in such amount as is provided for in the General Appropriation Bill, which is there fixed at $4,764.00 for each year of the current biennium.

Section 10 pertains to the duties of the Board of Pardons and Paroles which seems to be clear and unambiguous and needs no interpretation.

Section 11 merely provides for office quarters of the Board.

Section 12, we feel, should be quoted in full. It reads as follows:

"The Board is hereby authorized to release on parole with the approval of the Governor any person confined in any penal or correctional institution in this State, except persons under sentence of death, who has served one-third (1/3) of the maximum sentence imposed, provided that in any case he may be paroled after serving fifteen (15) years. All paroles shall issue upon order of the Board, duly adopted and approved by the Governor.

"Within one year after his admission and at such intervals thereafter as it may determine, the Board shall secure and consider all pertinent information regarding each prisoner, except any under sentence of death, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of such physical and mental examination as have been made.

"Before ordering the parole of any prisoner, the Board may have the prisoner appear before it and interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment or for his maintenance and care,

and when the Board believes that he is able and willing to fulfill the obligations of a law abiding citizen.  <u>Every prisoner while on parole shall remain in the legal custody of the institution from which he was released but shall be amenable to the orders of the Board.</u>

"The Board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the eligibility of prisoners for parole, the conduct of parole hearings, or <u>conditions to be imposed upon paroles.  Whenever an order for parole is issued it shall recite the conditions thereof</u>.

"It shall be the duty of the Board at least ten (10) days before ordering the parole of any prisoner or upon the granting of executive clemency by the Governor to notify the Sheriff, the District Attorney and the District Judge in the county where such person was convicted that such parole or clemency is being considered by the Board or by the Governor.

"If no probation and parole officer has been assigned to the locality where a person is to be released on parole or executive clemency the Board shall notify the chairman of the Volunteer Parole Board of such county prior to the release of such person.  The Board shall request such Volunteer Parole Board, in the absence of a probation and parole officer for information which would herein be required of such duly appointed probation and parole officer.  This shall not however preclude the Board from requesting information from any agency in such locality."  (Underscoring ours)

Sections 13, 14, 15, 16, 17, and 18 have reference to the powers and duties of the judges, district attorneys, county attorneys, police officers, prison officials, and Board of Pardons and Paroles in reference to administering this law.  These Sections appear to be plain and unambiguous, and we know of no provision of the Constitution with which they conflict.

Section 19 authorizes the Board upon a showing of probable violation of parole to issue a warrant for the return of any paroled prisoner to the institution from which he was paroled. It further provides that after the issuance of such warrant the parolee shall be deemed a fugitive from justice. As stated above, the Constitution of Texas grants to the Governor the sole power to revoke a parole. Until the Governor has exercised such power, the parolee is entitled to his liberty. Section 19 is therefore unconstitutional.

The first paragraph of Section 20 reads as follows:

"Any prisoner who commits a felony while at large upon parole and who is convicted and sentenced therefor may be required by the Board to serve such sentence after the original sentence has been completed."

It is our opinion that this portion of Sec. 20 is unconstitutional in that it makes it discretionary with the Board of Pardons and Paroles as to whether or not a person who is convicted and sentenced for a felony while at large upon a parole, will serve such sentence as imposed by the Court "after the original sentence has been completed." The Legislature had the authority, as heretofore stated, to grant to the Board the authority to release a prisoner under a parole, as such act does not amount to executive clemency; but it does not have the authority to vest in an administrative board the power to determine the time when a person convicted of a penal offense will be required to serve his sentence. Whether the sentences shall run concurrently or cumulatively is a judicial function.

The following portion of Section 20 attempts to give the Board of Pardons and Paroles the authority to revoke paroles. As heretofore stated, this power has been conferred upon the Governor by the Constitution of Texas, and the Legislature does not have the authority to grant that power to said Board or to anyone else.

Section 21 provides that when a paroled prisoner has performed the obligations of his parole for such time as shall satisfy the Board that his final release is not incompatible with his welfare and that of

society, the Board of Pardons and Paroles may make a final order of discharge and issue to the paroled prisoner a certificate of discharge. It is our opinion that Section 21 is unconstitutional in that such order of discharge and the issuance to the paroled prisoner of a certificate of discharge would in legal effect amount to a pardon in that it would exempt the person from the unexpired portion of the punishment inflicted upon him for the crime he had committed. As the Constitution confers the sole right of granting pardons to the Governor, the Legislature does not have the authority to grant this power to any other person or board. If the Board has power to reduce the maximum sentence, by releasing from parole before the expiration of that sentence, it has power to commute sentences, which authority, as heretofore stated, has been placed exclusively in the hands of the Governor by the Constitution. And to permit such action on the part of the Board would clearly interfere with the lawful judgment of a court. Board of Prison Com'rs. v. DeMoss (Ky.) 163 S. W. 183; Woods v. State (Ky.) 169 S. W. 558; Commonwealth of Penn., Ex Rel Banks v. Cain et al, 143 A.L.R. 1473.

Section 22 provides that the Board of Pardons and Paroles, upon request of the Governor, shall investigate and report to the Governor in reference to any person who is being considered by the Governor for pardon, commutation of sentence, reprieve, or remission of fine or forfeiture and to make recommendations thereon. This Section is in harmony with Section 11 of Article IV of our Constitution and therefore in all respects valid.

Section 23 of the Act provides for the Board appointing a person to the position of "Director of Probation and Paroles" and defines the duties of such officer. This Section contemplates that such officer should receive a salary and perform full-time duties, but the Legislature has failed to make an appropriation for such salary; and by reason thereof said Section will have no force and effect until such time as a subsequent Legislature may make such appropriation.

Sections 24, 25, 26, 27, 28, and 29 provide for the appointment of probation and parole officers and define their duties and powers and provide for their assignment to various courts of the State.

It is contemplated from such Sections that these pro-bation and parole officers are to be full-time employ-ees and receive a salary for their services. However, the Legislature has made no appropriations to pay the salaries of such officers and by reason thereof, such Sections are ineffectual until a subsequent Legisla-ture appropriates monies with which to pay the salar-ies of such officers.

You will note that in Section 12 of this Act it is provided that in the event no probation and parole officer has been assigned to the locality where a person is to be released on parole or execu-tive clemency, the Board shall notify the chairman of the Volunteer Parole Board of such county prior to the release of such person, and that the Board shall request such Volunteer Parole Board, in the absence of a probation and parole officer, for in-formation which would therein be required of such duly appointed probation and parole officer; and that Section further provides that the Board is not excluded from requesting information from any agency in such locality. We realize that in the absence of a paid "Director of Probation and Paroles," and in the absence of paid "Probation and Parole Officers," assigned to the various courts throughout the State; and by reason of the insufficiency of the appropria-tions with which to carry out the provisions of this Act, the Board of Pardons and Paroles will be handi-capped in their efforts in administering this law. However, the various Volunteer Parole Boards, the county officials, and peace officers will doubtless co-operate with the Board in every way and will be able, to a great extent, to perform the duties con-templated to be performed by these officers.

Section 30 of the Act reads as follows:

"The provisions of this act are here-by extended to all persons who, at the ef-fective date thereof, are eligible to be placed on parole under the terms of this act with the same force and effect as if this act had been in operation at the time of such person's becoming eligible to be placed on parole."

It is our opinion that this provision is con-stitutional. Although at the time of these prior con-victions this parole law was not written into the pre-scribed punishment, the Governor upon recommendation of

the Board of Pardons and Paroles has the power, after conviction, to grant pardons. Sec. 11, Art. IV, Texas Constitution. Under this authority the Governor has heretofore granted conditional pardons, which, in fact, amounted to releasing under parole as provided in this Act. As stated by the Courts, the Governor has the power to grant a partial pardon and place any conditions therein that are not "illegal, immoral or incapable of performance." This Act provides in effect that the parole granted by the Pardon Board shall not be effective until approved by the Governor. Therefore, in approving a parole granted to a person convicted before the effective date of this Act, the Governor would be in fact exercising his constitutional power of executive clemency. Woods v. State (Ky.) 169 S. W. 558.

Section 31 pertains to fees paid to various officers in criminal cases and provides that the placing of a defendant on probation shall be considered a final disposition of the case. This Section is plain, unambiguous, and constitutional. Section 32 provides that the Act shall not be construed to prevent or limit the exercise by the Governor of the powers of executive clemency. This Section is plain, unambiguous, and constitutional. Section 33 provides that this Act shall not apply to parole from institutions for juveniles. This Section is plain, unambiguous, and constitutional. Section 34 repeals the old parole law and all laws or parts of laws in conflict with the Act. It specifically provides that this Act shall not be construed as repealing Arts. 776 through 781 of Vernon's Annotated Statutes, Code of Criminal Procedure, which is commonly known as the suspended sentence law. These provisions are valid. Section 35 of the Act provides that if any section, paragraph, part, sentence, clause, or phrase of the Act be held unconstitutional, that it shall not affect the validity of the remainder, and declares that the Legislature would have passed each and every section, paragraph, part, sentence, clause, and phrase of this Act severally. It is our opinion that although, as pointed out above, several sections or portions thereof are unconstitutional, the valid portions remaining constitute a full and complete act within itself and should be administered by those entrusted therewith.

Section 36 defines various words and terms used in the Act. We find nothing in these definitions which in any way conflicts with our Constitution; but, on the contrary, the definitions appear to be in harmony therewith.

## SUMMARY

House Bill 120, 50th Legislature (Probation and Parole Law) in granting power to courts of record to place a convicted person on probation and in granting power to the Board of Pardons and Paroles to release on parole a convicted person is constitutional. A parole is not a reprieve or any form or executive clemency. County courts, corporation courts, and justice courts do not have the power, after conviction, to place the defendant on probation. Section 8 of said Act creating a nomination committee to certify to the appointing authorities those applicants who are eligible for appointment to the Board of Pardons and Paroles is unconstitutional because it is in conflict with Sec. 11 of Art. IV of the Texas Constitution. Section 20 of the Act, wherein it attempts to authorize the Board of Pardons and Paroles to revoke paroles is unconstitutional in that it is in conflict with Sec. 11 of Art. IV of the Texas Constitution, which provides that "The Governor shall have the power to revoke paroles." Unless and until the Governor revokes the parole, the parolee is entitled to serve his sentence outside the prison walls. Each member of the Board of Pardons and Paroles is entitled to receive an annual salary of $4,764.00 during the present biennium. It is the duty of the Board of Pardons and Paroles to administer this Act insofar as they can with whatever funds are available to them. The Board of Pardons and Paroles in making recommendations to the Governor for executive clemency is not required to consider the provisions of this Act. Whenever a court revokes a probation, the probationer may appeal the revocation to the Court of Criminal Appeals. The determination of whether a sentence under a subsequent conviction

shall be cumulative or concurrent is a judicial function, and that portion of Sec. 20 of the Act attempting to confer this power upon the Board of Pardons and Paroles is unconstitutional. The Board of Pardons does not have the power to discharge a convicted person who has been paroled, before he has served the maximum term of his sentence, as such an act would be a pardon; and this power has been vested solely in the Governor by the Constitution. Persons convicted before the effective date of this Act are eligible for parole by virtue of the Governor's pardoning power. Except as herein pointed out, this Act is constitutional. Sec. 11, Art. IV, Tex. Const.; Sec. 11A, Art. IV, Tex. Const.; Snodgrass v. State, 150 S.W. 162; Baker v. State, 158 S. W. 998; Ex Parte Black, 59 S. W. (2d) 828.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *W. V. Geppert*

W. V. Geppert
Assistant

WVG/JCP

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL